CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
11/10/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 6:15-cr-00007 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LENNY BALDWIN, JR., | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Defendant Lenny Baldwin, Jr., is the subject of an upcoming sentencing and supervised release revocation hearing, both scheduled for November 17, 2026. (*See* ECF No. 127; *United States v. Baldwin, Jr.*, No. 7:25-cr-00004, [ECF No. 56].) He has moved to dismiss violations 1, 2, and 3 of the operative Supervised Release Revocation Report (ECF No. 120), arguing that the court lacks jurisdiction to hear those violations because the conduct supporting them "occurred during [his] first term of supervised release." (ECF No. 128). As discussed below, the court concludes that it retains jurisdiction over the alleged violations at issue, and it will deny Mr. Baldwin's Motion to Dismiss.

## I. Factual and Procedural Background

On March 7, 2017, Mr. Baldwin was sentenced to 120 months' imprisonment and a life term of supervised release for coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). (ECF Nos. 63–64.) He began his life term of supervised release on May 10, 2023. (ECF No. 120 at 3.)

On January 10, 2024, his probation officer filed a petition alleging that Mr. Baldwin had violated the terms of his supervised release. (ECF No. 69.) The accompanying Supervised Release Violation Report, filed on April 9, 2024, described Mr. Baldwin's contact with a female

friend with whom Mr. Baldwin briefly stayed for a period of time during late 2023 to early 2024. (ECF No. 85 at 4.) It also described Mr. Baldwin's contact with the friend's minor son, indicating that a resulting Child Protective Services report was under investigation at that time. (*Id.*) The probation officer's report did not list that conduct as a violation, though; instead, the report alleged that Mr. Baldwin had violated his supervised release by (1) committing another crime and (2) failing to register as a sex offender. (*Id.* at 5.) The court revoked his supervised release on May 17, 2024, and sentenced him to an 8-month revocation term of imprisonment and another life term of supervised release.[1] (ECF No. 97.)

Mr. Baldwin completed his revocation sentence on October 1, 2024, at which time he again began supervised release. (ECF No. 120 at 5.) On February 27, 2025, Mr. Baldwin was indicted on seven counts related to his contact with his friend's minor son in late 2023. (*See United States v. Baldwin, Jr.*, No: 7:25-cr-00004, [ECF Nos. 3, 37].) On August 27, 2025, Mr. Baldwin pleaded guilty to Count 3 of the new indictment. (*See United States v. Baldwin, Jr.*, No. 7:25-cr-00004, [ECF Nos. 40, 42].)

Meanwhile, on March 3, 2025, just after his indictment, Mr. Baldwin's probation officer petitioned to again revoke Mr. Baldwin's supervised release. (ECF No. 98.) Another Supervised Release Revocation Report was filed on November 24, 2025, alleging that Mr. Baldwin had (1) committed another crime (the one at issue in Case No. 7:25-cr-00004); (2) resided at a place unapproved by his probation officer (his friend's house in late 2023); (3) had contact with a minor (his friend's son in late 2023); and (4) failed to disclose access to all

[1] The Honorable Norman K. Moon presided over Baldwin's first sentencing and supervised release revocation hearings. The undersigned is handling the second supervised release revocation hearing because he was assigned to preside over Baldwin's second criminal prosecution, which provides the factual predicate for that second revocation.

of his devices.[2] (ECF No. 120 at 7–8.) His sentencing and his supervised release revocation hearing are both scheduled for November 17, 2026. (ECF No. 127; *United States v. Baldwin, Jr.*, No. 7:25-cr-00004, [ECF No. 56].)

On October 16, 2026, Mr. Baldwin filed a motion to dismiss the first three alleged violations of his supervised release set to be heard at his November 17, 2026 supervised release revocation hearing. (ECF No. 128.) He argues that, because the alleged conduct supporting those violations occurred prior to his completion of his first revocation sentence, the court no longer has jurisdiction over the related violations. (*Id.* at 9.)

## II. ANALYSIS

Section 3583(e) of Title 18 provides certain circumstances under which a district judge may revoke, extend, modify, or terminate a defendant's term of supervised release. *See* 18 U.S.C. § 3583(e)(1)–(4); *United States v. Winfield*, 665 F.3d 107, 109–10 (4th Cir. 2012). And under § 3583(h), the court may reimpose supervised release following the completion of a revocation sentence of incarceration. 18 U.S.C. § 3583(h); *Winfield*, 665 F.3d at 110. But in any case, "a district court's power to revoke a term of supervised release or to sanction violations ends when that term expires." *United States v. Thompson*, 924 F.3d 122, 127 (4th Cir. 2019) (citing 18 U.S.C. § 3583(i)). That power only extends beyond the term's expiration "if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i).

It is well-established in the Fourth Circuit that termination and revocation have different implications. "When the district court terminates a term of supervised release, the

[2] The final alleged violation is not a subject of Mr. Baldwin's motion to dismiss. (*See* ECF No. 128 at 7 n.2.)

defendant is discharged from the court's supervision." *United States v. Harris*, 878 F.3d 111, 115 (4th Cir. 2017). But "when the court revokes a term of supervised release, the defendant is not discharged from the court's supervision." *Id.* at 115; *see also id.* ("Unlike termination, revocation does not end the term of supervised release; instead, the term of supervised release continues on past revocation."); *Winfield*, 665 F.3d at 112 ("[A] revoked term of supervised release survives the revocation because the act of revocation does not terminate the release but allows the release to continue to have some effect.").

In Mr. Baldwin's view, his time on supervised release should be considered two separate and distinct terms. (*See* ECF No. 128 at 8–9.) The first began when he completed his prison sentence on May 10, 2023, and terminated or expired when he completed his revocation sentence on October 1, 2024. (*Id.*) At that point, Baldwin contends, he began his second term of supervised release, and the court lost the power to review any conduct alleged to have occurred prior to October 1, 2024, unless the § 3583(i) exception applies. (*Id.*) And because the petition and violation report were filed after October 1, 2024, Mr. Baldwin argues, the court lacks jurisdiction to hear alleged violations 1, 2, and 3. (*Id.* at 9.)

The government has a different view entirely. (*See* ECF No. 129.) It argues that a term of supervised release continues past revocation *and* a revocation term of incarceration. (*Id.* at 4.) So, under the government's interpretation, when Mr. Baldwin completed his prison sentence on May 10, 2023, he began a life term of supervised release that continued through his revocation term of incarceration and will continue through Mr. Baldwin's life unless terminated.

Mr. Baldwin's argument therefore hinges on a very narrow distinction: In his view,

while revocation *does not* terminate a term of supervised release, completing a revocation sentence and beginning a subsequent term of supervised release *does* cause the prior term of supervised release and, thus, the court's supervision over alleged violations occurring during that prior term, to expire or terminate. The court disagrees because it concludes that the Supreme Court's reasoning in *Johnson v. United States*, 529 U.S. 694 (2000), and the Fourth Circuit's holdings in *Winfield* and *Harris* foreclose Mr. Baldwin's proposed distinction.

In *Johnson*, the Supreme Court determined that § 3583(e) made an important distinction between termination and revocation. *Id.* at 705–06. The Court reasoned that if some or all of a term of supervised release may be served in prison, then "something about the term of supervised release survives the preceding order of revocation." *Id.* The Court further explained that "any balance [of the supervised release term] not served in prison may survive to be served out as supervised release." *Id.* at 707; *see also id.* at 706 ("[S]ince it continues in some sense after revocation even when part of it is served in prison, why can the balance of it not remain effective as a term of supervised release when the reincarceration is over?"). Under *Johnson*, then, a term of supervised release that would otherwise extend past the date on which a revocation sentence concludes does exactly that; it does not automatically terminate or expire just because a "new" term of supervised release is imposed upon the defendant's release from his revocation sentence.[3]

[3] Though—as other courts have acknowledged—§ 3583 has been modified since *Johnson* was decided, the *Johnson* Court's interpretation of it remains both sound and binding. *See United States v. Cross*, 846 F.3d 188, 190 (6th Cir. 2017) ("[N]one of the amendments to [§ 3583] since [*Johnson*] liberate us to equate revocation of supervised release with termination of it.").

Moreover, Baldwin correctly identifies that the facts of *Johnson* did not require the Court to address the issue of "whether a term of supervision continues past the completion of the revocation sentence into a subsequent term of supervision." (ECF No. 130 at 3.) But Baldwin cannot explain why this court should neglect *Johnson*'s guidance that a revoked order of supervised release "continues to have some effect" in favor of

The Fourth Circuit refined this reasoning in *Winfield* and *Harris*. In *Winfield*, it reviewed a district court's decision to first impose a twelve-month revocation sentence for technical violations and then impose a second twelve-month revocation sentence for substantive violations, with both categories appearing on one supervised release revocation report.[4] *Winfield*, 665 F.3d at 109. The defendant argued that the district court had effectively revoked his supervised release during the first sentence and that that revocation "ends the period of supervision, and with it, the district court's power to further adjudicate violations or impose additional prison time." *Id.* at 110.

The Fourth Circuit disagreed, pointing to *Johnson*'s rule that a "revoked term remains in effect." *Id.* at 112. It also clarified that the district court retained jurisdiction regardless of whether the district court imposed an additional term of supervised release following the revocation sentence.[5] *Winfield*, 665 F.3d at 112. And importantly, the panel distinguished Winfield's case from another case in which the court did not have jurisdiction, noting that "Winfield was subject to the conditions of his supervised release when he committed the violations." *Id.* at 113 (distinguishing *United States v. Brooks*, 1:06-CR-476, slip op. at 2 (E.D. Va. Feb. 9, 2011)).

In *Harris*, the Fourth Circuit explained *Winfield* further, stating that its "holding in

---

imposing a textually-unsupported termination date at the start of a defendant's new term of supervised release. *Johnson*, 529 U.S. at 706.

[4] The district court did not explicitly revoke the defendant's supervised release for the technical violations but did so when imposing the second twelve-month revocation sentence for the substantive violations. *Winfield*, 665 F.3d at 109. But the Fourth Circuit assumed, without deciding, that the district court effectively revoked the defendant's supervised release during the first hearing in reaching its ultimate conclusion. *Id.* at 111–12.

[5] The defendant had unsuccessfully sought to distinguish his case from *Johnson* on this ground. *Winfield*, 665 F.3d at 112.

*Winfield* did not turn on the fact that the government filed the petitions before the first revocation. Instead, [it] held that the [district] court maintained jurisdiction because the government filed the petition before Winfield's *supervised release* expired." *Harris*, 878 F.3d at 117; *see also id.* ("It is the timing of the petition relative to the expiration of the supervised release that matters."). The *Harris* panel also favorably cited a Sixth Circuit decision explaining that "[r]evocation therefore revokes only the release part of supervised release." *Harris*, 878 F.3d at 115 (citing *Unites States v. Cross*, 846 F.3d 188, 190 (6th Cir. 2017)). Neither *Winfield* nor *Harris* suggests that the conclusion of a revocation term of incarceration terminates the court's supervisory power.

The only case Mr. Baldwin cites to support his preferred interpretation is *United States v. Brown*, 651 Fed. App'x 216 (4th Cir. 2016). It is true that *Brown* supports Mr. Baldwin's position and "addresses the precise issue in this case." (ECF No. 130 at 5.) But *Brown* is unpublished and therefore not binding precedent on this court. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (explaining that unpublished decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (quoting *Hupman v. Cook*, 640 F.2d 497, 501 & n.7 (4th Cir. 1981)) (cleaned up)). Moreover, as the government correctly points out, *Brown* fails to square its holding with either *Johnson* or the text of § 3583(e). (ECF No. 129 at 5–6.) It also predates *Harris*, which binds this court and wholly endorses a broad view of the court's jurisdictional power in supervised-release proceedings. *See Harris*, 878 F.3d at 117–18 ("The key to [the supervisory release] scheme is the district court's 'broad authority to protect the public,' and its 'ability to police violations of the release's conditions.'" (first quoting *United States v. Wing*, 682 F.3d 861, 878 (9th Cir. 2012) (Tallman, J., dissenting); and

then quoting *Cross*, 846 F.3d at 190)). For all of those reasons, the court finds *Brown* unpersuasive.

Finally, the court would be remiss if it didn't note that adopting Mr. Baldwin's position would render it "powerless to act upon a newly discovered or alleged violation if the government does not file a petition before the court revokes the defendant's supervised release." *Id.* at 118; *see also id.* ("This creates a powerful incentive for defendants to 'readily admit to lesser violations to obtain more lenient sentencings' while hiding a more serious violation from the court." (quoting *United States v. Vázquez-Álvarez*, No. 12-286 (GAG), 2015 WL 5090113, at *4 (D.P.R. Aug. 24, 2015))). Where the *Harris* court "decline[d] to 'eliminate the court's ability to punish defendants for more serious violations that it was not aware of at the time of revocation,'" this court will not take the opposite approach.[6] *Id.* (quoting *Vásquez-Álvarez*, 2015 WL 5090113, at *4) (cleaned up).

The court recognizes that *Winfield* and *Harris* bear some factual distinctions from Mr. Baldwin's case; of the three, Mr. Baldwin is the only defendant who had completed his revocation sentence before the new petition for revocation was filed. But reading those cases in conjunction with *Johnson*, the court sees no indication—explicit or implicit—in any controlling case suggesting that the court's jurisdiction remains intact after revocation but terminates after the conclusion of an accompanying revocation sentence. Especially when, as here, the sentencing court imposed a life term of supervised release, the court will not blithely assume that it later terminated that life term without saying so.

[6] As the government notes, and as is reflected in the first supervised release revocation petition (*see* ECF No. 85 at 4), the government was still investigating the violations at issue here when it sought revocation for the first time in early 2024. (ECF No. 129 at 6.)

The rule is, in the court's view, fairly simple: "Revocation . . . revokes only the release part of supervised release; the district court's supervisory authority continues until the defendant's supervised release terminates or expires." *Cross*, 846 F.3d at 190; *see also Harris*, 878 F.3d at 115–17. Because Mr. Baldwin's life term of supervised release had neither terminated nor expired at the time of the revocation petition, the court concludes that it retains jurisdiction over the first three violations alleged in the current revocation report.

## III. CONCLUSION

For the reasons stated herein, the court concludes that it has jurisdiction to hear alleged violations 1, 2, and 3 at the supervised release revocation hearing scheduled for November 17, 2026. It will therefore deny Mr. Baldwin's motion to dismiss.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 10th day of November, 2026.

HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE